```
             UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF KENTUCKY
                   NORTHERN DIVISION
                       AT ASHLAND
```

**CIVIL ACTION NO. 2012-059 (WOB)**

**PATRICIA L. CONN**                                      **PLAINTIFF**

VS.                    OPINION AND ORDER

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL**
**SECURITY**                                              **DEFENDANT**

This action was brought to obtain judicial review of an administrative decision of the Commissioner of Social Security denying plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

The matter is now before the Court on the parties' cross-motions for summary judgment.  (Docs. 13, 14).

*Factual and Procedural Background*

Plaintiff Patricia L. Conn ("Conn") applied for DIB on February 26, 2009, and for SSI benefits on August 20, 2009.  In both applications, Conn alleged a disability onset date of June 8, 2008, and an inability to work due to depression, anxiety and panic disorder, right leg problems, short-term memory loss, high blood pressure, and a learning disorder.  At the time of her SSI application, Conn was 44 years old and had an eighth-grade education.  She had prior work experience as a product inspector and janitor.

Conn's application was denied initially and on reconsideration. At Conn's request, a hearing was held before an Administrative Law Judge ("ALJ") via video conference on March 12, 2010. In a decision, dated December 22, 2010, the ALJ found that Conn was not disabled. (AR 57-65).[1] Conn timely pursued her administrative remedies, and this appeal is now ripe for review.

## *Analysis*

### A. <u>Standard of Review</u>

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citation omitted). Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* "Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." *Her v. Comm'r of*

---

[1] "AR" denotes the Administrative Record.

*Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) (citation omitted).

### B. Disability Framework and the ALJ's Decision

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant still performs substantial gainful activity; Step 2, whether any of the claimant's impairments, alone or in combination, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether a significant number of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner to identify "jobs in the economy that accommodate [Plaintiff's] residual functional capacity." *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Here, at Step 1, the ALJ found that, while Conn had worked after her alleged disability onset date, her work activity did not rise to the level of "substantial gainful activity." (AR 59). The ALJ thus proceeded to the next step.

At Step 2, the ALJ found that Conn had the severe impairments of borderline intellectual functioning and adjustment disorder with depressed mood, which caused her more

3

than minimal limitations in her ability to perform basic work-related activities.  (AR 59-60).

At Step 3, however, the ALJ concluded that Conn's mental impairments, considered singly and in combination, did not meet or medically equal any of the listed impairments.  In doing so, the ALJ specifically considered listings 12.04 ("Affective Disorders") and 12.05 ("Mental Retardation"), concluding that Conn did not satisfy the "paragraph B" functional limitations criteria for these impairments.

Specifically, the ALJ found that Conn had only mild restrictions in the activities of daily living; moderate difficulties in social functioning; moderate difficulties in concentration, persistence, or pace; and no episodes of decompensation.  Thus, the ALJ concluded that Conn had not shown two "marked" limitations or one such limitation coupled with "repeated" episodes of decompensation so as to satisfy the functional criteria for these listed mental impairments.

Specifically as to Listing 12.05 ("Mental Retardation"), the ALJ found that the Paragraph A and B criteria were not met because Conn was not dependent on others for her personal needs or unable to follow directions such that the use of standardized measures of intellectual functioning was precluded.  (AR 61).

The ALJ then rejected the argument of Conn's representative that Conn satisfied the Listing 12.05.C criteria.  In so doing,

4

the ALJ relied on the report of consultative psychological examiner Christopher Catt, Psy.D., in which Catt noted that Conn's IQ was borderline and that she had adequate judgment and insight. (AR 61). Catt further noted that Conn reported that she had completed the eighth grade, received no special education services, and worked for a factory for almost six years before being laid off. The ALJ thus found "no evidence of significantly subaverage intellectual functioning before the age of 22," as required under Listing 12.05. (AR 61).

The ALJ then found, based on the entire record, that Conn had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but that she had the nonexertional limitations of handling only simple work procedures and instructions and performing object-focused work requiring no more than infrequent and casual contacts with co-workers and supervisors. (AR 61). The ALJ further found that Conn could complete routine mental aspects of work without special supervision and adapt to gradual change and appreciate work hazards on the job. (AR 61).

At Step 4, therefore, the ALJ determined that Conn could perform her past relevant work as a janitor and product inspector. (AR 63). In so doing, the ALJ relied upon the testimony of Leah Salyers, a vocational expert.

5

Finally, at Step 5, the ALJ determined, in the alternative, based on testimony from Salyers and applicable guidelines, that Conn also could perform a significant number of jobs in the national economy. (AR 64).

Accordingly, the ALJ found Conn not to be disabled.

### C.  Plaintiff's Contentions on Appeal

Conn advances four arguments on appeal: (1) the ALJ incorrectly concluded that Conn's leg injury from a prior gunshot wound and back pain are not "severe impairments"; (2) the ALJ erred in determining Conn's mental RFC; (3) the mental RFC is not supported by substantial evidence; and (4)the ALJ failed to fully develop the record because he did not obtain psychometric testing of Conn's intellectual capacity to determine whether she meets the criteria for the listed impairment of mental retardation.

#### 1. Argument 1

Conn first argues that the ALJ incorrectly concluded that Conn's leg injury and back pain are not severe impairments.

An impairment is "severe" if it "significantly limits" the claimant's physical or mental ability to do basic work activities. *See* C.F.R. § 404.1520(c). The ALJ's determination that Conn suffered from no "severe" physical impairment was based on the report of Dr. Robert K. Brown, a state agency medical consultant. Dr. Brown noted from Conn's medical records

6

that Conn "has normal gait and station" and "has no peripheral edema and pedal pulses are intact."  (AR 407).

Moreover, Conn testified that the gunshot wound to her leg had occurred more than thirty years ago, when she was a teenager.  (AR 80-81).  In the interim years as an adult, of course, Conn had performed the physically demanding work of a product inspector and janitor.

The ALJ's determination that Conn suffered from no "severe" physical impairment is thus supported by substantial evidence.

Moreover, the Sixth Circuit has held that the fact that some of a claimant's alleged impairments are deemed not "severe" at step two of the sequential analysis -- whether correctly or not -- is legally irrelevant where the ALJ finds other impairments to meet the "severe" standard, thereby enabling the claimant to clear that step of the analysis, and where the non-severe impairments are considered at the subsequent steps.  *See Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (citation omitted).  That being the case here, Conn's first claim that the ALJ erred is without merit.

**2.   Arguments 2 and 3**

Conn's second and third arguments challenge the ALJ's assessment of Conn's mental RFC.

Conn argues that the ALJ erred in determining that Conn retained the ability to "tolerate co-workers and supervisors in

7

an object focus [*sic*] context with infrequent and casual contacts" and to "adapt to gradual change and appreciate work hazards." (Doc. 13-1 at 7).

A claimant's "residual functional capacity" is the "most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In determining the claimant's RFC, the ALJ must consider "all of the relevant medical and other evidence," including evidence of non-severe impairments. 20 C.F.R. §§ 404.1545(a)(2), (3).

The ALJ's opinion shows that he adhered to this legal framework. He first reviewed the nature of Conn's mental and physical impairments, including her depression, nerves, panic attacks, high blood pressure, and residual problems in her right leg. (AR 62). The ALJ then reviewed Conn's testimony regarding her daily activities, including the alleged impact of her impairments thereon.

Having done so, the ALJ found that Conn's impairments could reasonably be expected to cause the reported symptoms; however, he found Conn's statements regarding the intensity, persistence, and limiting effects of those symptoms not to be fully credible given the weight of the evidence in record. (AR 62-63).[2]

Specifically, the ALJ relied on the reports of two separate state agency psychological consultants who reviewed Conn's

---

[2] The Court notes that Conn has not challenged the ALJ's credibility assessment.

8

records and found her to be "not significantly limited" in fifteen out of twenty different mental activities, and only "moderately limited" in the remaining five categories. (AR 356-57, 402-03). These physicians specifically opined, contrary to Conn's assertion in her brief (Doc. 13-1 at 8), that Conn retained the basic mental skills to acceptably:

> A.   Understand and recall simple work procedures and instructions.
>
> B.   Complete routine mental aspects, making associated work-related decisions, without special supervision.
>
> **C.   Tolerate coworkers and accept supervision in an object focused context with infrequent and casual contacts.**
>
> **D.   Adapt to gradual change and appreciate work hazards on the job described.**

(AR 358) (emphasis added).

The ALJ further noted that he had reviewed Conn's medical records from Pathways, a clinic where Conn had sought counseling. (AR 63). While Conn criticizes the ALJ for making no "reasoned discussion" of these records (Doc. 13-1 at 8), it is nonetheless clear that he did review the records and that he factored them into his RFC assessment.

Finally, the ALJ gave weight to the report of the psychological consultative examiner, Christopher Catt, who examined Conn on October 27, 2009. (AR 350-54). While Catt noted that Conn had "restricted affect and depressed mood," he opined that her impairments of adjustment disorder and

9

borderline intellectual functioning created only "slight" to "moderate" limitations on her abilities with respect to comprehension, memory, toleration of stress, concentration, and the capacity to respond appropriately to co-workers and supervisors. (AR 353-54).

As the ALJ pointed out, no treating or examining medical source indicated that Conn was completely disabled or that she had functional limitations other than those to which she testified, the severity and persistence of which the ALJ found not to be credible. Thus, while Conn disagrees with the ALJ's mental RFC, this Court concludes that it is nonetheless supported by substantial evidence.

Conn also asserts that the RFC is not supported by substantial evidence because it fails to account for limitations on her ability to maintain an appropriate pace or meet production quotas. She thus argues that, because the ALJ did not include such limitations in his hypothetical questions to the vocational expert, that expert's opinion cannot support the ALJ's RFC determination and the resulting conclusions regarding Conn's ability to work.

It is well established, however, that hypothetical questions posed to a vocational expert "need only incorporate those limitations which the ALJ has accepted as credible." *Smith v. Astrue*, Civil Action No. 12-90-KKC, 2013 WL 259047, at

10

*3 (E.D. Ky. Jan. 23, 2013) (citing *Casey v. Sec. of Health & Hum. Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

There was no medical opinion or evidence before the ALJ that Conn had any such functional limitations with respect to pace or quotas. Instead, Conn merely testified, with respect to her prior job as a garment inspector, that she was fired, in part, because "my performance wasn't very good" and she "couldn't do what they expected." (AR 87-88). As noted, the ALJ found Conn's testimony as to the effect of her impairments not to be credible, and he was thus not required to incorporate such alleged limitations into his hypothetical questions to the vocational expert.

This claim of error is thus without merit.

### 3. Argument 4

"When a claimant alleges that her impairment meets or equals a listed impairment, she must present specific medical findings that satisfy all of the criteria of the specific listing." *Roark v. Astrue*, Civil Action No. 6:10-CV-67-JMH, 2011 WL 1226874, at *3 (E.D. Ky. Mar. 30, 2011) (citations omitted).

The diagnostic description in Listing 12.05's introductory paragraph states:

> Mental retardation refers to significantly subaverage
> general intellectual functioning with deficits in adaptive
> functioning initially manifested during the developmental

11

>    period; *i.e.*, the evidence demonstrates or supports onset
>    of the impairment before age 22.

20 C.F.R. pt. 404, Subpt. P, App. 1.  "In the Sixth Circuit, a 'claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder.'"  *Durbin v. Astrue*, Civil Action No. 11-63-JBC, 2011 WL 6091720, at *2 (E.D. Ky. Dec. 6, 2011) (quoting *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001)).

Conn's argument that the ALJ erred in failing to order psychometric testing for her essentially attempts to shift this well-established burden.  As noted, the burden of establishing disability remains at all times on the claimant.

Further, Conn's reliance on *Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106 (6th Cir. 1986), is misplaced because the finding that the ALJ there failed to "fully and fairly" develop the record was based on the ALJ's contradictory statements regarding whether the claimant satisfied certain listings, as well as other deficiencies in the record.

Here, the ALJ unequivocally found that Conn did not meet the criteria for Listing 12.05.C for several reasons, based on the report of the consultative psychological examiner.  (AR 61).  No contradictory or ambiguous statements on this issue were made, unlike in *Johnson*.

Moreover, applicable regulations provide that additional testing is required only when the record is inadequate for the

12

ALJ to make a determination. 20 C.F.R. § 404.1512(e). Here, the ALJ based his decision on an extensive record which contained evidence on all the Listing 12.05 factors, and it was Conn's burden to provide any additional evidence that supported her application. The ALJ thus did not err in not ordering psychometric testing.

Therefore, having reviewed this matter, and the Court being sufficiently advised,

**IT IS ORDERED** that: (1) Plaintiff's motion for summary judgment (Doc. 13) be, and is hereby, **DENIED**; (2) Defendant's motion for summary judgment (Doc. 14) be, and is hereby, **GRANTED**; and (3) the administrative decision will be **AFFIRMED** by separate judgment entered concurrently herewith.

This 12th day of February, 2013.



Signed By:
William O. Bertelsman
United States District Judge